UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | NO. 2:13-CR-34 |
| | ) | NO. 2:15-CV-117 |
| RICKY DWAYNE HARVEY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and by Order of Reference from the District Court referring the matter for an evidentiary hearing [Doc. 882]. The matter has been fully briefed, and an evidentiary hearing was held on August 29, 2018.

**I.  INTRODUCTION**

Defendant Ricky Dwayne Harvey ("Harvey") filed a Motion to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255, [Doc. 663], raising a number different issues pertaining to whether he received ineffective assistance of counsel. One of those claims pertains to whether trial counsel failed to "timely file a notice of appeal despite [Harvey's] explicit instruction to do so." [Doc. 822]. The District Court, after reviewing the petition, "determined that an evidentiary hearing as to this claim only [was] necessary…" and referred the matter to the undersigned to conduct "the necessary evidentiary hearing" on that claim alone. *Id*.

**II.  PROCEDURAL AND FACTUAL BACKGROUND**

The Grand Jury returned a five count indictment charging Harvey with conspiracy to distribute and possess with the intent to distribute Oxycodone, conspiracy to conduct and attempt to conduct a financial transaction affecting interstate commerce, conspiracy to distribute and possess with the intent to distribute buprenorphine, using a communication facility in the

1

Case 2:13-cr-00034-JRG-MCLC   Document 835   Filed 08/31/18   Page 1 of 12
PageID #: 4645

conspiracy to distribute buprenorphine, and distributing oxycodone. [Doc. 77]. Harvey entered a plea agreement in which he stipulated to the following facts:

> b) The defendant obtained oxycodone pills from numerous sources of supply, including some in and around Detroit, Michigan. The defendant often obtained quantities of oxycodone pills totaling 1,000 at a time from his sources in Detroit, Michigan. The majority of these pills were 30 mgs, but the defendant also received 80 mg oxycodone pills from Detroit as well. Upon obtaining these pills from his sources in Detroit and other places, the defendant re-distributed them in the Eastern District of Tennessee and elsewhere....
> 
> ...
> d) During the period of the conspiracy, the defendant sent a wire transfer for $400.00 to a source of supply to promote the defendant's dealing in oxycodone pills.
> 
> ...
> n) ... The defendant admits, throughout this series of phone calls, that he conspired with numerous people to distribute and introduce subutex and/or suboxone (buprenorphine) inside the Sullivan County Jail.
> 
> ...
> p) ... On April 1, 2013, another co-defendant, working as a confidential informant, purchased 40 oxycodone (30 mg) pills from the defendant. The transaction was audio recorded. There was also a recorded call made between the co-defendant and the defendant setting up the buy. This recorded call was made at the direction of and in the presence of law enforcement. During the recorded call, the defendant told the co-defendant what the price would be for the pills. After distributing the pills to the co-defendant, the defendant gave him a cigarette box to put the pills in. Additionally, numerous police officers personally observed the co-defendant and the defendant meet and ride together in the vehicle operated by the defendant during the transaction....
> 
> ...
> r) On June 13, 2013 law enforcement officers executed a search warrant at the residence of the defendant. A small amount of marijuana was found at the residence and an oxycodone bottle prescribed to the defendant with 89 (30 mg) pills remaining. Surveillance officers had observed a vehicle leave the defendant's residence during the early morning hours. Officers approached this vehicle as it was stopped at a nearby gas station. The drive denied that he was the defendant. The driver stated that his name was Matthew Owen, produced a Tennessee issued identification card in the name of Matthew Owen and recited the social security number and date of birth for Matthew Owen. The drive further signed seizure paperwork for the vehicle in the name of Matthew Owen. Another family member was present in a separate vehicle, as they were all en route to a methadone clinic in North Carolina, who also stated that the defendant was not the driver and was not present. It was soon thereafter determined that the drive was in fact the defendant, not Matthew Owen. After being placed under arrest, the defendant asked to speak to officer Burk Murray of the Sullivan County Sheriff's

2

> Office and apologized for lying about his true identity. Officer Murray told the defendant that he had almost gotten away. The defendant told Officer Murray that it was his job to try to get away and that he had done his homework in the event that he got pulled over, just like Officer Murray does his homework. The defendant had approximately $1,000.00 in cash and a quantity of Xanax pills on his person.
> ...
> t) The defendant agrees and stipulates that he conspired to distribute an estimate of 10,000 (30 milligram) oxycodone pills in the Eastern District of Tennessee, and elsewhere during the relevant time period of this conspiracy. The defendant further agrees that 10,000 (30 mg) oxycodone pills converts to 2,010 kilograms of marijuana. Overall, the defendant agrees that he is accountable for 2,010 kilograms of marijuana.

[Doc. 204, ¶ 4]. He also agreed to waive, with limited exceptions, any right to file a direct appeal or to collaterally attack his conviction as follows:

> 11. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant agrees not to file a direct appeal of the defendant's conviction(s) or sentence, except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the district court or above any mandatory minimum sentence deemed applicable by the district court, whichever is greater.
>
> (b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction(s) and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

[Doc. 207, ¶ 11].

On August 29, 2013, he entered his plea in a joint proceeding with a co-defendant before the District Court [Doc. 298, *Minute Entry*]. At that hearing, the following colloquy occurred:

> Q. As I said earlier, I understand that each of you has entered into a plea agreement with the United States. Have each of you read the plea agreement or had it read to you?

3

A. Yes, sir.[1]

Q. Has your attorney explained to each of you all the terms and conditions of the plea agreement you've entered into with the government?

A. Yes, sir.

Q. Do each of you fully understand all the terms and conditions of the plea agreement you've entered into with the United States?

A. Yes, sir.

…

Q. Mr. Harvey, your plea agreement has been filed with the court as document 204 in this case. Is this your signature on this plea agreement filed with the court?

A. Yes, sir.

Q. Now, I also note, Mr. Harvey, on your plea agreement that the initials "RH" appear at the bottom right-hand corner of each page. Are those your initials?

A. Yes, sir.

Q. And did you place those there to indicate that you had reviewed each page of this plea agreement?

A. Yes, sir.

Q. Are each of you satisfied with your lawyer's representation of you in this case?

A. Yes, sir.

[Evidentiary Hearing Exhibit 3, *Transcript of Plea Hearing*, pg. 14-16].

The District Court also reviewed with Harvey his appellate waiver and right to collaterally attack his conviction. The following colloquy occurred regarding those issues:

---

[1] As mentioned, this plea hearing also included a co-defendant, Donnie Ray Horne. Each defendant answered each question consecutively, with Horne answering first and then Defendant, unless the question notes being specifically addressed to Defendant. Horne's answers have been excluded for efficiency and ease of reading and comprehension.

4

> Q. Mr. Taylor, have either of these defendants waived any appeal rights or rights to file a section 2255 motion in the plea agreement?
>
> A. They have, Your Honor. That's contained within paragraph 11 of the plea agreement, both for Mr. Horne and Mr. Harvey.
>
> …
>
> Q. …Do each of you understand that under your plea agreement with the government, you have expressly waived rights to appeal or to collaterally attack you convictions or the resulting sentence in this case as just stated by the United States Attorney and as set out in paragraph 11 of your respective plea agreements?
>
> A. Yes, sir.
>
> Q. Did each of you read paragraph 11 of the plea agreement carefully?
>
> A. Yes, sir.
>
> Q. Did each of you review the waiver of appellate rights in paragraph 11 of the plea agreement with your attorney?
>
> A. Yes, sir.
>
> Q. Have each of you fully discussed with your attorney these waivers of your right to appeal and your right to collaterally attack you conviction or the resulting sentence in this case?
>
> A. Yes, sir.

[Evidentiary Hearing Exhibit 3, *Transcript of Plea Hearing*, pg. 28-30].

The Presentence Report ("PSR") calculated his total offense level to be 34, his criminal history category as V, and his advisory guideline range to be 235-293 months imprisonment, but the statutory maximum penalties as to each count restrict the guideline range to 235-240 months [Doc. 553, pg. 2]. On May 5, 2014, the District Court sentenced Harvey to an effective sentence of 180 months [Doc. 565, *Judgment*]. No appeal was filed.

On April 24, 2015, Harvey filed this Motion to vacate under 28 U.S.C. § 2255 [Doc. 663]. The United States filed a response and attached the affidavit of Harvey's trial counsel [Doc. 679, 679-1].

## III. FINDINGS OF FACT

Harvey was charged on five counts of a twenty-eight count indictment with conspiracy to distribute and possess with the intent to distribute Oxycodone, conspiracy to conduct and attempt to conduct a financial transaction affecting interstate commerce, conspiracy to distribute and possess with the intent to distribute buprenorphine, using a communication facility in the conspiracy to distribute buprenorphine, and distributing oxycodone [Doc 77]. He entered into a plea agreement in which he agreed to plead to count 1 and count 2 of the indictment for conspiracy to distribute a quantity of oxycodone and conspiracy to conduct and attempt to conduct a financial transaction affecting interstate commerce [Doc. 204, *Plea Agreement*]. His trial counsel reviewed all the provisions of the plea agreement with him, answering any questions he might have had about its terms and conditions. In consideration of the other terms of the agreement, Harvey agreed to waive filing a direct appeal of his sentence, provided it did not exceed the advisory sentencing guideline range as determined by the District Court or the statutory minimum, whichever was greater [Doc. 204, pg. 11]. He advised his trial counsel that he understood the appellate waiver provision. Trial counsel believed Harvey understood the waiver and its implications for any appeal.

Harvey appeared before the Honorable J. Ronnie Greer, United States District Judge, on August 29, 2013 and entered his plea of guilty to the charges specified in the plea agreement. Under oath, he advised the District Court that he and his trial counsel had reviewed the plea agreement and specifically the appeal waiver and that he fully understood its terms and effect on his right to file an appeal. Sentencing occurred on May 5, 2014, and the judgment in this case was

6

entered on May 12, 2014 [Doc. 565]. At sentencing, the District Court specifically advised Harvey of his right to appeal pursuant to Fed. R. Crim. P. 32(j) and the time frame in which that right must be exercised [Evidentiary Hearing Exhibit 2, *Transcript of Sentencing Hearing*, pg. 67]. The time to file an appeal would have expired on May 26, 2014. He did not file an appeal nor did he advise the Clerk's Office to file one on his behalf. His counsel also did not file an appeal.

At the evidentiary hearing on his 2255 motion, Harvey maintains that from the time he received the Presentence Report with his advisory guideline range, he was unhappy, even to the point of anger, with counsel. Harvey testified that this anger stemmed from counsel's preliminarily estimate of a lower sentencing guideline range. He stated, and counsel agreed, that they had strong conversations surrounding his potential sentence. Harvey testified that because the guideline range was higher than he expected, Harvey wished to withdraw from his plea agreement. He also stated that counsel stated he may try to remove himself from the case. Despite this tension between counsel and client, counsel successfully argued for a downward departure from the advisory guideline range [Doc. 553 and Evidentiary Hearing Exhibit 2, pg. 8-16], and Harvey received 55 months fewer than the lower end of the guideline range.

Harvey testified that he specifically instructed his counsel to appeal the case after sentencing. While the exact date and manner of initiating the phone call is unknown by both Harvey and his counsel, it is agreed upon that a phone call between Harvey and his counsel took place at the Claiborne County jail where Harvey was sent for booking within a day or two after his sentence was imposed. It would have been around May 6, 2014 that counsel spoke with Harvey on the phone where he was being held at the Claiborne County jail. Harvey testified that it was during this phone call that he told his counsel that he wanted to appeal. He stated that he was not pleased with the sentence he received after asking for 140 months. He testified that his counsel

7

Case 2:13-cr-00034-JRG-MCLC   Document 835   Filed 08/31/18   Page 7 of 12
PageID #: 4651

advised him that the government will probably appeal because the Court had sentenced him so far below the guideline range. Harvey additionally testified that his counsel said that it was going to be done, leading him to think that his counsel was going to appeal.

His trial counsel disputes that testimony. Counsel testified that he reviewed the appeal waiver with Harvey when he signed the plea agreement, as is evidenced by his practice of having the defendant initial at the bottom of each page to signify that the defendant understands what is on each page. He discussed with him the advantages and disadvantages of the waiver. After the Court pronounced a sentence of 180 months, counsel understood Harvey to be pleased with that sentence, considering that he was facing at least 235 months as the low end of the advisory guideline range. As to the post-sentencing phone call, counsel confirmed that he spoke with Harvey about the "outcome and appeal" but that at no time did Harvey request him to file an appeal. Had he instructed him to appeal, he would have filed a notice of appeal as he had done for other clients who had signed appellate waivers.

Harvey testified that he tried to contact counsel several times in the months following the phone call at the Claiborne County jail. He said that he tried to call to find out about how the appeal was going. He also stated that he wrote a couple of letters to counsel but never got a reply. Harvey stated that the next time he spoke to counsel was several months after filing this § 2255 motion to vacate, which was filed April 24, 2015, almost a year after sentencing.

Counsel acknowledges this last phone call received from Harvey, noting that they discussed the 2255 filing and the petition Harvey brought to vacate. However, counsel only recalls receiving one letter from Harvey. In the undated letter bearing Harvey's signature, introduced as Exhibit 4 at the evidentiary hearing on August 29, 2018, Harvey says "thanks for everything" and "we did as much as possible and I really appriecatte [sic] everything" [Exhibit 4]. Based on details

8

Case 2:13-cr-00034-JRG-MCLC   Document 835   Filed 08/31/18   Page 8 of 12
PageID #: 4652

of the letter, Harvey wrote it after being sentenced on May 5, 2014. Even though Harvey maintains that he remained upset at counsel for not obtaining a lower sentence and that is therefore why he requested an appeal, the letter sent to counsel does not suggest anger. He did not mention any disappointment with counsel nor did he mention an appeal. The letter does not reflect the feelings of an angry man nor those of a man concerned with an appeal.

The Court finds as a matter of fact that Harvey's claim that he verbally instructed his counsel to file an appeal to be incredible. Although he claimed at the hearing the appeal was very important to him, he did not act as if it were. He did not file a notice of appeal on his own. He did not ask the Clerk's Office to file a notice of appeal for him. There is no credible evidence that Harvey instructed counsel to file an appeal on his behalf. Indeed, he did not make any further inquiry to counsel about the topic, which undercuts his claim. Accordingly, the Court finds that Harvey did not explicitly instruct his counsel to file an appeal.

## IV.  ANALYSIS

 "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Roe v. Flores–Orte*ga, 528 U.S. 470, 477 (2000)).  To establish a claim of ineffective assistance of counsel, the petitioner must prove that his counsel's performance was deficient and that the deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The *Strickland* analysis applies to claims that the attorney's deficient performance led to the forfeiture of a direct appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Prejudice is shown when there is a reasonable probability that, but for counsel's deficient performance, petitioner would have timely appealed. *Id*. at 483-84; see also *Ludwig v. United States*, 162 F.3d

456, 459 (6th Cir.1998) (holding failure to file direct appeal when specifically requested establishes prejudice).

As noted, the Court finds that Harvey did not instruct his counsel to file an appeal either in writing or verbally. In those instances, "[a]bsent specific instructions to file an appeal, [the Court] ask[s] first "whether the attorney 'consulted' with the defendant about the benefits and drawbacks of bringing an appeal." *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003). When consultation has occurred, counsel "performs in a professionally unreasonable manner *only* by failing to follow the defendant's express instructions with respect to the appeal.'" *Doyle,* 631 F.3d at 818 (quoting *Flores-Ortega*, 528 U.S. at 478) (emphasis in the original).

In this case, Harvey's counsel consulted with him about an appeal. They spoke specifically about the circumstances in which Harvey could bring an appeal and if doing so would be in his best interest. Harvey, under oath, before the District Court acknowledged that his counsel had reviewed the appellate waiver with him and that he understood the effect of that waiver on his ability to pursue an appeal at both his plea hearing and his sentencing. At the conclusion of the sentencing hearing, the District Court also advised him that he could file an appeal and that the clerk would prepare one for him if he wanted. Notwithstanding that, Harvey never instructed his counsel or the Clerk's Office to appeal prior to the date in which an appeal had to be filed.

In *Doyle,* the Sixth Circuit found counsel's performance not unreasonable where the defendant knew of his right to appeal, his counsel had discussed with him the merits of an appeal, and the defendant had not instructed his counsel to file a notice of appeal. *Doyle,* 631 F.3d at 818. In *Wright v. United States,* 320 F.App'x 421 (6th Cir. 2009), the defendant had signed a plea agreement that contained a broad waiver of the right to appeal his conviction and sentence. Despite the waiver, the defendant would be entitled to relief under § 2255 if the district court determined

10

that there was "an actual request for an appeal." *Id.* at 426. The Sixth Circuit remanded the case to determine whether the defendant "expressly requested that his counsel appeal his sentence and that this request was ignored…." *Id.* at 427.

Again in *Campbell v. United States,* 686 F.3d 353 (6th Cir. 2012), the Sixth Circuit held "that even when a defendant waives all or most of his right to appeal, an attorney who fails to file an appeal that a criminal defendant explicitly requests has, as a matter of law, provided ineffective assistance of counsel that entitles the defendant to relief in the form of a delayed appeal." *Id.* at 360.

In this case, the Court finds that Harvey did not make an explicit request for his counsel to appeal this matter. The Court finds that his claims that he specifically instructed his counsel to appeal verbally around the day after sentencing to be incredible. The Court also finds that Harvey failed to request or even mention an appeal in the only written communication provided [Exhibit 4].

## V.     RECOMMENDATION

Counsel consulted with Harvey about the benefits and drawbacks of an appeal. Harvey was aware of his right to appeal and did not, at any point, explicitly instruct, whether in writing or verbally, his counsel to file a notice of appeal. Accordingly, the Court RECOMMENDS that Harvey's § 2255 claim that his counsel was ineffective for failing to file an appeal be DENIED.[2]

                                                                   Respectfully Submitted,

                                                                   s/Clifton L. Corker
                                                                   United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).

11