UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Respondent, | ) | |
| | ) | |
| v. | ) | Nos. 2:13cr34 |
| | ) |        2:15cv117 |
| RICKY DWAYNE HARVEY, | ) | |
|     Petitioner. | ) | |

MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion of Ricky Dwayne Harvey ("Harvey" or "Petitioner"), a federal inmate, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255, [Doc. 663].[1] The United States has responded in opposition to the §2255 motion, [Doc. 679], and Petitioner has replied, [Doc. 702]. Because the records and files of the case conclusively establish that Petitioner is not entitled to relief under §2255, no further evidentiary hearing is necessary. For the reasons which follow, the Court finds Petitioner's §2255 motion meritless and it will be DENIED and DISMISSED with prejudice.

**I. Procedural and Factual Background**

A federal grand jury returned an indictment on April 9, 2013, charging fourteen defendants with a variety of offenses related to a wide-ranging oxycodone trafficking conspiracy, [Doc. 3]. A superseding indictment was returned on May 14, 2013, which added three new defendants, including the Petitioner, [Doc. 77]. Harvey was charged in Count 1 with conspiracy to distribute and possess with the intent to distribute oxycodone in violation of 21 U.S.C. §§ 846, 841(a), and

---

[1] All document references in this memorandum opinion are to the docket sheet in Case No. 2:13cr34.

841(b)(1)(C); in Count 2 with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); in Count 26 with conspiracy to distribute and possess with intent to distribute buprenorphine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(E)(i); in Count 27 with use of a communication facility in committing, causing, and facilitating the commission of a felony offense in violation of 21 U.S.C. § 843; and in Count 28 with distribution of oxycodone in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), [*Id*.]. Pursuant to a negotiated plea agreement, [Doc. 204], Petitioner pled guilty to Counts 1 and 2 on August 29, 2013, [Doc. 298]. A Presentence Investigation Report ("PSR") was ordered and sentencing was set for January 13, 2014, [*Id*.].

The PSR was prepared and disclosed on December 9, 2013. The probation officer grouped Counts 1 and 2 pursuant to the United States Sentencing Commission Guidelines Manual (USSG). The probation officer found a base offense level of 32 pursuant USSG § 2S1.1(a)(1), [PSR, ¶ 37], added 2 levels pursuant to USSG § 2S1.1(b)(2)(B) because Harvey was convicted under 18 U.S.C. § 1956, [*id*., ¶ 38], and added 3 levels because of Harvey's managerial or supervisory role pursuant to USSG § 3B1.1(b), [*id*., ¶40], resulting in an adjusted offense level of 37, [*Id*., ¶ 42]. Three levels were then subtracted for acceptance of responsibility pursuant to USSG §§ 3E1.1(a) and (b), [*id*., ¶¶ 44, 45]. and the total offense level was 34, [*Id*., ¶ 46]. Harvey's criminal history category was V, resulting in a restricted advisory guidelines range of 235 to 240[2] months of imprisonment, [*Id*., ¶97]. The sentencing hearing was continued to May 5, 2014, [Doc. 517]. Harvey withdrew his objections to the PSR, the PSR was adopted as the Court's findings, and, on May 5, the Court granted Harvey's motion for a variance and sentenced Petitioner to a term of imprisonment of 180 months, [Doc. 564]. Judgment was entered on May 12, 2014, [Doc. 565]. No direct appeal was filed. The instant § 2255 motion was timely filed on April 24, 2015, [Doc. 663].

---

[2] The guidelines range was 235 months to 293 months; however, the range was restricted at the top by the 20-year statutory maximum sentence.

In his plea agreement, Petitioner entered into a very lengthy stipulation of facts, *see* [Doc. 204 at ¶¶ 4(a)-(t); PSR at ¶¶ 8-28]. The Court will refer to the stipulation as necessary in this memorandum opinion and order but will not set the stipulation out verbatim here.

**II. Standard of Review**

This Court must vacate and set aside Petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . ." 28 U.S.C. §2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the Court may summarily dismiss the §2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6hth Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying

*Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

### III. Analysis

In his initial motion, [Doc. 663], Petitioner raises four grounds for relief under § 2255. He also indicated in the initial motion that he did not appeal from the Court's judgment because he asked counsel to appeal, "but he failed to file an appeal as requested," [*Id*. at 4]. Petitioner treats his allegation about counsel's failure to file a notice of appeal as requested as a free-standing claim in his reply, [Doc. 702], and the Court will likewise treat it as such. The Court will address each of the claims raised by Petitioner in turn, beginning with the claim of ineffective assistance of counsel for failure to file a notice of appeal.

#### A. Failure to File Notice of Appeal

In his initial motion, Harvey did not list failure of counsel to file a notice of appeal as a ground for relief, as noted above. After the filing of his reply brief, the Court referred the case to United States Magistrate Judge Clifton L. Corker to conduct an evidentiary hearing and file a report and recommendation on that single issue. The Magistrate Judge then appointed counsel to represent Petitioner, had Petitioner returned to the district for a hearing, and scheduled the evidentiary hearing for July 18, 2018, [Doc. 824]. After a continuance of the hearing date, the evidentiary hearing was

4

conducted on August 29, 2018, [Doc. 832], and the Magistrate Judge thereafter filed his report and recommendation, recommending that the Court deny relief on the claim, [Doc. 835]. Petitioner has filed objections to the report and recommendation, [Doc. 836]. After careful and *de novo* review, the Court has accepted and adopted the report and recommendation of the Magistrate Judge in an Order filed contemporaneously with this one. Therefore, this claim is denied.

### B. Unknowing Guilty Plea (Ground One in Doc. 663)

Petitioner claims his guilty plea was "unconstitutional, defective, and unknowing" for a number of reasons which he does not elaborate upon until his reply brief, [Doc. 702 at 3-4]. Petitioner first claims that the government breached certain provisions of his plea agreement, in which the government agreed to "Offense Level after an acceptance of responsibility, his Base Offense Level would be no more than 29: No enhancements were ever mentioned and Harvey was under the impression no enhancement would be applied; Harvey was never told that money laundering was either charged or an automatic enhancement," [*Id*. at 3]. He claims "it was agreed no enhancement would be provided." [*Id*.]. Because "Harvey was under the impression that he would not be enhanced, his base offense level would be, with acceptance of responsibility BOL 29, and no money laundering was ever mentioned in any negotiations, nor charged in the indictment," Petitioner argues the Court in reality rejected his plea agreement and he should have been permitted to withdraw his guilty plea. The United States responds that Harvey does not set forth sufficient facts to entitle him to relief and that the record clearly establishes that the guilty pleas were knowing and voluntary, [Doc. 679 at 5-6].

As an initial matter, Harvey misstates the provisions of his plea agreement. The plea agreement contains no agreement that his total offense level, after reduction for acceptance of responsibility, would be 29. On the contrary, it provides that "[t]he Court may impose any lawful

term(s) of imprisonment," "the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to **other factors and guidelines as set forth in the Sentencing Guidelines,"** and that the "plea agreement constitutes the full and complete agreement and understanding between the parties . . . and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States." [Doc. 204 at ¶¶ 6(a), 6(c), 14] (emphasis added). Harvey confirmed under oath that his attorney had discussed with him how the sentencing guidelines might apply to his case, [Doc. 673 at 30], and that no promise not contained in the plea agreement had been made by anyone to induce him to plead guilty, [*Id*. at 19]. Likewise, Petitioner's assertion that money laundering was never mentioned in plea negotiations, nor charged in the indictment, is clearly and flatly contradicted by the record. In other words, the record in the case completely removes the "factual" underpinning of Petitioner's claim as to the voluntariness of the guilty pleas, and the claim fails for this reason.

In addition, however, the transcript of the plea colloquy establishes that the Court meticulously complied with the requirements of Rule 11 of the Federal Rules of Criminal Procedure before accepting Harvey's guilty pleas. Before accepting a guilty plea, a district court must advise the defendant of certain rights, address the defendant in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement), and determine that a factual basis exists for the plea. Fed. R. Crim. P. 11(b). Here, Harvey has not demonstrated any flaw with the Court's compliance with Rule 11. Rule 11 requires the Court to assure that the defendant understands his constitutional rights, the nature of the crimes charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime. *United States v. Goldberg*, 862 F. 2d 101, 106 (6th Cir. 1988). The Court did exactly that. Furthermore, Petitioner is bound by his under oath testimony at the change of plea

hearing. "[S]olemn declarations in open court carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and because "the court . . . scrupulously followed the required procedure [under Rule 11], the defendant is bound by his statements . . . ." *Baker v. United States*, 781 F. 2d 85, 90 (6th Cir. 1986). Thus, the record clearly contradicts any claim by Harvey that his guilty pleas were unknowing or involuntary. This claim lacks merit.

**C. Presence of Unauthorized Persons in Grand Jury (Ground Two in Doc. 663]**

Petitioner claims that AUSA Donald Wayne Taylor, who presented his case to the grand jury, "failed to have the proper identification and certification as an employee of the United States Attorney's Office" and was thus an unauthorized person in the grand jury, [Doc. 702 at 14; Doc. 663 at 3]. More specifically, Harvey argues that AUSA Taylor "lacked the sufficient oath of office, certificate of appointment and employees[sic] affidavit in violation of Public Policy and Statutes, [Doc. 663 at 5] and that he only "[r]ecently found out of Taylor's unauthorized presence," [*Id*. at 6]. The United States responded by providing the Appointment Affidavit and oath showing AUSA Taylor's appointment as an Assistant United States Attorney on September 30, 2007, [Doc. 679-1].

Petitioner's claim fails for several reasons. First, Petitioner provides only conclusory statements without any supporting facts, or even any explanation of how, or the circumstances under which, he recently learned the information he now alleges. As set forth above, Petitioner must allege facts, not conclusions, and a claim without substantiating allegations of fact lack legal merit. *See Loum, above.* Second, the claim is conclusively refuted by the record. It is clear that AUSA Taylor was appointed on September 30, 2007, and took the required oath on October 1, 2007, well before the grand jury returned the May 14, 2013 indictment. Finally, even if AUSA Taylor was irregularly appointed, Petitioner has made no attempt to show any prejudice.

7

Federal Rule of Criminal Procedure 6(a)(2) provides that "[a] party may move to dismiss the indictment based on an objection to the grand jury or on an individual juror's lack of legal qualification." Fed. R. Crim. P. 6. Rule 6 further provides that, while the grand jury is in session, only "attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device" may be present. Fed. R. Crim. P. 6(d).

"[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). The Supreme Court applied this principle to Rule 6 in *United States v. Mechanik*, 475 U.S. 66, 71 (1986), where it considered allegations that unauthorized persons had been present in a grand jury proceeding. While the Court "express[ed] no opinion as to what remedy may be appropriate for a violation of Rule 6(d) that has affected the grand jury's charging decision," it did hold that a violation of Rule 6(d) does not require "automatic reversal of a subsequent conviction" absent a showing of prejudice. *Id*. Here, Harvey has offered no evidence, nor even argued, that the alleged violation affected the grand jury's charging decision or resulted in prejudice to him.

### D. Double Counting (Ground Three in Doc. 663)

Harvey claims the "district court commited[sic] impermissible[sic] double counting by application of USSG 3B1.1and 2S1.1(b)(2)([B]) because the aggravating factors are duplicative." [Doc. 663 at 7]. Although Harvey's argument is less than clear, he contends that applying both guidelines provisions in his case resulted in the "same conduct [] be[ing] punished cumulatively under separate guideline provisions," citing *United States v. Romano*, 970 F.2d 164 (6th Cir. 1992). He claims "both 'directing a person to transfer funds,' and 'then receiving the funds of the transfer,[] are identical conduct." [Doc. 702 at 7].

Petitioner's base offense level for his conviction under 18 U.S.C. § 1956 was determined by reference to USSG § 2S1.1 of the Guidelines which provides that the base offense level is determined from the offense level for the underlying offense from which the laundered funds were derived. Based on the stipulated quantity of oxycodone, the base offense level was 32, [PSR at ¶ 37]. A two-level upward adjustment in the offense level was applied pursuant to USSG § 2S1.1(b)(2)(B) because the defendant was convicted under § 1956 and three levels were added pursuant to USSG § 3B1.1(b) because the defendant "directed an unindicted co-conspirator to send wire transfers on multiple occasions in furtherance of the defendant's oxycodone transactions," [PSR at ¶¶ 38, 40].

Double counting occurs when "precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 2000). Here, there is no double counting. The two enhancements apply to two entirely different aspects of the Petitioner's behavior; (1) his involvement in both drug trafficking and money laundering, and (2) his role as a manager or supervisor in the offense in that he directed the activities of at least one other person. There was no error in the Court's calculation of the range. And, *Romano* does not dictate a contrary result. Although *Romano* does recognize the public policy against double counting, *United States v. Smith*, 196 F. 3d 676, 681 (6th Cir. 1999), its specific holding has been abrogated. *Id.*; see also *United States v. Chingman*, 89 F. App'x 504, at \*\*5 (6th Cir. 2004). The United States Sentencing Commission Guidelines were amended, effective November 1, 1993, to state that "[a]bsent an instruction to the contrary, the adjustments from different guideline sections are applied cumulatively." *Chingman* at \*\*5. Thus, there was nothing improper about applying §§ 2S1.1(b)(2)(B) and 3B1.1 cumulatively.

### E. Actual Innocence of Violation of 18 U.S.C. § 1956(h) (Ground Four in Doc. 663)[3]

Petitioner argues that "[b]ecause 1956(h) requires the transaction be ten thousand dollars or more, the factual basis for this conviction cannot stand" and he is thus "actually, factually and legally innocent" of Count Two, [Doc. 663 at 8]. In his reply to the government's response, [Doc. 702], Petitioner makes the further argument that § 1956(h) does not state a crime but is simply a penalty provision. He is mistaken on both fronts.

Title 18 U.S.C. § 1956(h) provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." The superseding indictment charged Harvey and other defendants with conspiring to violate 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i),[4] [Doc. 77, Count Two]. As the government observes, any requirement that the offense involve a transaction exceeding $10,000 is "conspicuously absent" from these provisions and Petitioner's claim is plainly without merit.

Petitioner's second argument is just as plainly without merit. His argument that § 1956(h) is simply a penalty provision and does not state a substantive offense has been clearly rejected by the United States Supreme Court. In *Whitfield v. United States*, 543 U.S. 2009 (2005), a defendant argued that he could not have been convicted of a conspiracy offense under § 1956(h), because § 1956(h) was merely a penalty provision that did not create a new substantive offense. *Id*. at 214. The Supreme Court rejected this argument and determined that Congress plainly and unambiguously created a substantive offense when enacting § 1956(h). *Id*. at 215-17.

---

[3] Petitioner also claims he is eligible for a sentence reduction under Guidelines Amendment 782, which lowers the base offense level for most drug offenses, [*see* Doc. 663 at 10]. Section 2255 is not the proper vehicle through which to pursue relief based on Amendment 782; rather, Harvey must pursue relief through a motion pursuant to 18 U.S.C. § 3582(c). Harvey has previously filed such a motion, [Doc. 609], which was denied by the Court, [Docs. 735, 773].

[4] Petitioner erroneously claims that the indictment is ambiguous as to whether the indictment is linked to these two code sections. He is clearly mistaken.

Harvey also makes a somewhat vague claim, in his reply brief, that the money laundered was not "criminally derived property" but rather "criminal receipts" and there was no evidence "that the money that was wired was derived from profits," apparently relying on *United States v. Edgmon*, 952 F.2d 1206 (10th Cir. 1991) and *United States v. Lovett*, 964 F.2d 1029 (10th Cir. 1990). Although it is difficult to discern the precise nature of the Petitioner's claim, to the extent he simply alleges there was no evidence that the money used in the wire transfers "represented the proceeds of some form of unlawful activity," [Doc. 77], he is mistaken. In the stipulated facts, Petitioner admitted that "between the approximate month of May 2008 and continuing through the month of June 2013," a five-year period, Harvey conspired to distribute approximately ten thousand 30 milligram, oxycodone pills. [Doc. 204 at ¶ 4(a)]. During that time, he was obtaining pills "from numerous sources of supply, including some in and around Detroit, Michigan." [Id. at ¶ 4(b)]. Throughout the term of the conspiracy, Petitioner sold oxycodone pills on a regular basis and, on numerous occasions, either wired money or directed his girlfriend to wire money, to a source of supply "to promote and further the defendant's oxycodone transactions." [Id. at ¶¶ 4(b) – (k)]. It is thus clear that Petitioner was using proceeds of unlawful drug sales to replenish his supply of illegal narcotics. There is simply no merit to Petitioner's argument.

**IV. Conclusion**

For the reasons set forth above, the Court holds Petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a

"substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of his claims was debatable or wrong. Therefore, the Court will **DENY** a certificate of appealability.

A separate judgment will enter.

ENTER:

                                                             s/J. RONNIE GREER
                                                           UNITED STATES DISTRICT JUDGE